UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THERESA H-W,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**DECISION AND ORDER**

1:24-CV-00814 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Theresa H-W ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 13[1]), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings, and the Commissioner's motion (Dkt. 13) is denied.

---

1 Defendant filed his motion as a Memorandum of Law rather than a motion, but the Court will treat it as Defendant's motion for judgment on the pleadings. (Dkt. 13).

**BACKGROUND**

Plaintiff protectively filed her applications for DIB on October 28, 2013, (Dkt. 3 at 199-206) and SSI on November 27, 2013, (*id.* 3 at 207-212).[2] In her applications, Plaintiff alleged disability beginning December 30, 2012, but she later amended her onset date to June 1, 2013. (*Id.* at 199, 207, 228). Plaintiff's applications were initially denied on February 28, 2014. (*Id.* at 110, 111). A hearing was held before administrative law judge ("ALJ") Melissa Lin Jones on May 19, 2016. (*Id.* at 43-109). On June 13, 2016, the ALJ issued an unfavorable decision. (*Id.* at 23-37). Plaintiff requested Appeals Council review; her request was denied on June 16, 2017, making the ALJ's determination the Commissioner's final decision. (*Id.* at 10-15).

Plaintiff appealed her case to the United States District Court for the Western District of New York, and on June 19, 2019, the Honorable Lawrence J. Vilardo, United States District Court Judge, remanded the case for further administrative proceedings. (Dkt. 4 at 156-167). The Appeals Council remanded the case to the ALJ on July 22, 2019. (*Id.* at 170-74).

A second hearing was held before ALJ William Weir on October 20, 2020. (*Id.* at 86-129). The ALJ issued an unfavorable decision on December 29, 2020. (*Id.* at 63-77). Plaintiff again appealed the Commissioner's decision to the United States District Court for the Western District of New York, and on August 17, 2022, the parties stipulated to

---

[2] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

remand the case to the Commissioner for further administrative proceedings. (*Id.* at 1146-47). The Appeals Council remanded the case to the ALJ on April 21, 2023. (*Id.* at 1149-55).

A third hearing was held before the same ALJ on March 4, 2024. (*Id.*at 1042-80). On May 7, 2024, the ALJ issued another unfavorable decision. (*Id.* at 1011-1030). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2018. (Dkt. 4 at 1014). At step one, the ALJ determined that Plaintiff was not engaged in substantial gainful work activity since June 1, 2013, the amended alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: lumbago, obesity, diabetes mellitus, and urinary incontinence. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of thyroid condition, hypertension, sleep apnea, Crohn's disease, status post renal condition, gastroesophageal reflux disease, dyslipidemia, carpal tunnel syndrome, left shoulder problems, depressive

disorder/bipolar disorder, anxiety disorder and posttraumatic stress disorder were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 1018). The ALJ particularly considered the criteria of Listings 1.03, 1.04A-C, 4.11, 11.14, and 6.00 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p. (*Id.* at 1019).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the additional limitation that Plaintiff requires hourly five-minute bathroom breaks, and she could perform occasional work above shoulder level and no limits below shoulder level. (*Id.*).

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a receptionist. (*Id.* at 1029). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 1030).

## II. <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ did not explain how he formulated Plaintiff's need for bathroom breaks in the RFC, failed to include all of Plaintiff's severe and non-severe impairments or explain why certain limitations were excluded, and failed to follow the Appeals Council remand order with respect to Plaintiff's past relevant work.

For the following reasons, remand for further administrative proceedings is required on the issue of the ALJ's determination regarding bathroom breaks.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . .' This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). But at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In

arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

The ALJ determined that Plaintiff had the RFC to perform sedentary work, except she would need hourly five-minute bathroom breaks. (Dkt. 4 at 1019). Plaintiff argues this highly specific RFC was not adequately tethered to the evidence of record. On these facts, the Court agrees.

In the decision, the ALJ considered the medical opinion evidence from several sources with respect to Plaintiff's Crohn's disease and urinary incontinence, the two limitations cited by the ALJ requiring the hourly five-minute bathroom breaks.

Nikita Dave, M.D., conducted a consultative examination on October 19, 2019. (Dkt. 4 at 580-84). Dr. Dave discussed Plaintiff's chronic renal insufficiency and Crohn's disease and opined that Plaintiff "would require frequent restroom breaks and intervals as needed due to diarrhea and constipation." (*Id.* at 584).

In granting Dr. Dave's opinion some weight, the ALJ stated:

> I have granted some weight to Dr. Dave's opinions given there is no showing [Plaintiff] requires frequent restroom breaks and intervals as needed because of diarrhea and constipation and warrants postural and environmental restrictions. Dr. Dave's opinion with regard to [Plaintiff's] need for breaks due to her diarrhea and constipation is based on [Plaintiff's] subjective assertions, which are not consistent with the evidence as a whole.
>
> . . .
>
> When considering the "frequent restroom breaks and intervals" as opined by Dr. Dave, this referred specifically to [Plaintiff's] diarrhea and constipation attributed to Crohn's disease. I note this is expressed in vague terms,

> especially considering that this report shows Dr. Dave reported that [Plaintiff] "has intermittent symptoms, flare-ups every several months, which consist of a few days of diarrhea". This statement is not consistent with an interpretation that Dr. Dave's statement that [Plaintiff] needs "frequent restroom breaks and intervals" meant occurring daily or frequently during the day. Again, [Plaintiff] reported to Dr. Dave and Dr. Dave stated in her report that the flares were "every several months" with diarrhea for a few days. Notably, this report is also consistent with [Plaintiff's] own testimony at the 2024 hearing, these flares happen only sporadically at intervals of a few months. With that, this limitation from Dr. Dave as to bathroom breaks is not consistent with a limitation that is greater than that determined in this decision. Instead, the restriction to hourly 5-minute breaks, considers and accommodates both [Plaintiff's] severe urinary impairment, as well as this nonsevere episodic Crohn's impairment, and if even the severity of the Crohn's flares happening only a few times per year or less necessitated a day off, this would be accommodated by regular tolerances of absences which the vocational expert testified generally that in her experience would be one day per month on average (Hearing testimony). Further, [Plaintiff's] report as to frequency of these flares is consistent with the evidence, which shows only interval follow up with her gastroenterology specialist throughout the period under consideration (*See*, e.g., Exhibit 18F, 21F, 30F, 46F). The limitations as determined in this decision fully consider and accommodate [Plaintiff's] urinary and other impairments, and this opinion is granted only some weight.

(*Id.* at 1026).

The ALJ also addressed the opinion of Fabiola B. Schlessinger, M.D., Ph.D., who testified at the 2024 hearing. (Dkt. 4 at 1046-1059). Dr. Schlessinger testified that she focused primarily on the nephology and urology part of Plaintiff's medical history, noting Plaintiff's history of recurrent urinary tract infections, which she characterized as "very severe" at times, and "urinary symptoms that are probably very uncomfortable and a true impairment." (Dkt. 4 at 1048-49). She noted that Plaintiff has the "urge to urinate like urinary frequency," spasms in her bladder, and "urge incontinence" which is confirmed in the urology treatment notes. (*Id.* at 1049). Dr. Schlessinger testified that Plaintiff would have a "need for frequent breaks at work, the need for bathroom access," noting that she

"think[s] that's a real need, both for the urinary symptoms and for Crohn's disease." (*Id.* at 1051). When asked if Plaintiff could perform sedentary work, Dr. Schlessinger stated that she could, "assuming that she has the ability to take a break and have bathroom access." (*Id.*). When asked to quantify the bathroom access, Dr. Schlessinger stated that "the fair thing for [Plaintiff] would be to have unlimited bathroom access as many visits to the bathroom as she would need," continuing to say, "[a]nd no limit with that." (*Id.*).

The ALJ explained his assessment of giving only partial weight to the opinion as follows:

> While Dr. Schlessinger testified that [Plaintiff] would need to use the bathroom at will, the medical evidence of record does not describe bathroom frequency or needs, and even in testimony, [Plaintiff] reported she uses the restroom on average one time per hour, unless a urinary tract infection is beginning, in which case then it is "sometimes twice". She further reported, as noted above, that Crohn's flares happen only every two to three months, only, and Dr. Dave reported these flares happen every "several months" (Exhibit 25F). As above, urology treatment notes, and testimony from Dr. Schlessinger established that [Plaintiff's] symptoms are relatively well-controlled with medication, and she was following with her urologist only every six months (Ex. 54F, p. 12). As above, the limitations to only occasional work above shoulder level, and no limitations below shoulder level, also considers her urinary symptoms. The restriction such that the claimant required an hourly break of 5 minutes accommodates [Plaintiff's] need to use the restroom, but also the need to change a pad on a regular basis to reduce the likelihood of the use of pads as contributory to a possible urinary tract infection, as indicated by Dr. Schlessinger. The report of Dr. Schlessinger that [Plaintiff] would require unlimited bathroom breaks is not consistent with the evidence, wherein there is no corroborative report of such frequency to urology providers overall, and even [Plaintiff's] own testimony at the 2024 hearing, where she reported she would need to use the bathroom "once an hour" adding thereafter, "sometimes twice" and that specifically an increase to twice an hour would be indicative of an impending urinary tract infection (Hearing testimony). As such, based upon [Plaintiff's] report of average bathroom use as once per hour, per her own testimony, an hourly 5-minute break, on average would accommodate [Plaintiff's] urinary symptoms. . . . As such, based upon the forgoing, Dr. Schlessinger's opinion that [Plaintiff] would require unlimited bathroom breaks is granted only

> partial weight, because a restriction to that degree relative to bathroom breaks is not consistent with the evidence, nor [Plaintiff's] own report at the hearing, as well as her recent reports to her urologist with follow up planned for every six months, but a limitation for hourly bathroom access is consistent with the evidence (Exhibit 54F, p. 12; Hearing testimony).

(Dkt. 4 at 1028-29).

As noted, in the RFC, the ALJ determined that Plaintiff required hourly five-minute bathroom breaks. (*Id.* at 1019). The explanation offered by the ALJ relating to his assessment of Plaintiff's need for hourly bathroom breaks is set forth above in connection with his consideration of Dr. Dave and Dr. Schlessinger's opinions, who both indicated that Plaintiff required bathroom breaks greater than those delineated in the RFC. While the explanation may provide insight as to the ALJ's determination that bathroom breaks were warranted, it does not clearly explain how he reached the determination that the breaks be hourly for five minutes, nor is it otherwise apparent from the record.

It is well-settled that an RFC finding is administrative in nature and, for that reason, the ALJ is not required to adopt any one medical opinion in its entirety; rather, the ALJ's RFC finding must be supported by substantial evidence in the record. *See Matta*, 508 F. App'x at 56. To be sure, "an RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion or specific limitation." *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020)); *see also Michael K. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1467-DB, 2022 WL 3346930, at *10 (W.D.N.Y. Aug. 12, 2022) ("[J]ust because there is no explicit opinion or subjective complaint that mirrors an RFC limitation does not mean

there was an error."); *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1474 (WBC), 2022 WL 2718510, at *4 (W.D.N.Y. July 13, 2022) ("[A]n RFC determination, even one containing highly specific limitations, is not fatally flawed merely because it was formulated absent a medical opinion.").

Rather, what is important is that the written determination make clear how the ALJ arrived at the specific limitation to ensure it was not the result of the ALJ's speculation, conjecture, or his own lay opinion. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (affirming remand where ALJ found that plaintiff would be "off-task" for ten percent of the workday but that determination was not supported in the record and could not be based on an "ALJ's own surmise"). In other words, while there must be evidentiary support for the ALJ's specific limitations, that support need not be in the form of a medical opinion as long as the ALJ's rationale in the written determination is supported by substantial evidence. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x at 109 (medical opinion providing specific restrictions reflected in the RFC is not required if the record contains sufficient evidence from which an ALJ can assess the RFC); *see also Charles E. v. Comm'r of Soc. Sec.,* 755 F. Supp. 3d 318, 324 (W.D.N.Y. 2024) ("Although the ALJ is not required to adopt Dr. Dave's assessment for 'frequent' restroom breaks verbatim, he is required to explain how the RFC accounts for that assessment, which he found to be persuasive and supported by the record."); *Joshua K. v. Comm'r of Soc. Sec.*, No. 19-CV-66-FPG, 2021 WL 235886, at *2-3 (W.D.N.Y. Jan. 25, 2021) (remand required where the ALJ did not "point to any evidence in the record suggesting why Plaintiff would be off task for this specific percentage of time," and explaining that "[s]pecific RFC assessments, like

percentage of time off-task, must be based on evidence in the record," and further explaining that generalizations pointed to by the Commissioner, including that the plaintiff had normal attention and concentration examination, engaged in many activities, and attended college, "were [not] included in the ALJ's decision as support for the specific off task assessment nor do they translate into a finding that Plaintiff would be off task five percent of the day").

This explanation is particularly important where, as here, the limitation assessed by the ALJ is *less* restrictive than those contained in the only medical opinions on point. *See Kenneth H. v. Comm'r of Soc. Sec.*, No. 23-CV-6358-LJV, 2024 WL 5075613, at *6 (W.D.N.Y. Dec. 11, 2024) ("And in contrast to cases where the ALJ's specific finding was not error because it was more generous to the claimant than any medical opinion, . . .medical opinions here found greater limitations."); *see also Jessica W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1209-DB, 2022 WL 345096, at *5 (W.D.N.Y. Feb. 4, 2022) ("Here, despite the fact that no physician issued an opinion regarding off-task limitations for Plaintiff, the ALJ explained that he included an off-task limitation of 10% of the workday due to, for example, [Plaintiff's] attention/concentration lapses. . . . Because the ALJ afforded Plaintiff the benefit of the doubt by including this limitation, the Court finds there is no ground for remand." (citation modified)).

While the ALJ and the Commissioner cite to Plaintiff's hearing testimony for support for the RFC determination (Dkt. 13 at 7 ("First and foremost, the ALJ's inclusion of an hourly five-minute bathroom break in the RFC was based on Plaintiff's own testimony.")), the hearing testimony too was more restrictive than the RFC determined by

the ALJ. For example, when asked if she still finds herself "needing to use the restroom or be in the bathroom during the day," she responded, "oh gosh, yes." (Dkt. 4 at 1060). The ALJ asked how often she needs to use the restroom, she answered, "about once an hour, sometimes twice." (*Id.*). He then asked for an estimation of how long she would be in the restroom for and she answered, "five, ten minutes." (*Id.* at 1061). Accordingly, the RFC once an hour breaks of only five minutes is not wholly consistent with Plaintiff's hearing testimony, resulting in a situation where it is not clear to the Court how the ALJ settled on once hourly break of five minutes rather than some other interval or length of break. Because the two medical opinions on the subject recommended greater frequency of bathroom breaks and because the ALJ determined that a lower frequency and duration was appropriate, it was incumbent on the ALJ to identify sufficient information that would justify the deviation and make clear how he settled on the restrictions set forth in the RFC. *Michelle A. v. Saul*, No. 19-CV-00991-MJR, 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("Case law from this District reflects that if an ALJ believes that an off-task time limitation is necessary, he or she must refer to a medical opinion or other specific evidence in the record that supports such a limitation."). Plaintiff's hearing testimony does not provide that justification.

And not only that, but the determination of percentage in this case is particularly problematic given that at the administrative hearing, when the Vocational Expect ("VE") was presented with a hypothetical which contained different frequency and duration of breaks, including an hourly break of five to ten minutes, the VE explained that would be "starting to exceed the limits of off-task time that most employers would tolerate." (Dkt.

4 at 1076); *see also Matthew G. v. Comm'r of Soc. Sec.,* No. 21-CV-01222-MJR, 2024 WL 48301, at *5 (W.D.N.Y. Jan. 4, 2024) ("The ALJ's error was not harmless. The VE testified that employers will tolerate employees being off task ten to 15 percent of the workday, but anything over 15 percent would preclude all competitive work. . . . So, if Plaintiff's time off task was actually greater than ten or 15 percent, the VE might have come to a different conclusion at step five of the sequential evaluation, which could have resulted in Plaintiff being found disabled."); *Michelle A.*, 2020 WL 7223235, at *5 ("[N]oting that the percent of off-task time was 'absolutely critical' to the disability determination where the VE testified that, if the off-task time was ten percent or more, the limitation would be 'work preclusive' and accordingly 'the Court cannot say that the ALJ's failure to tether the percent of off-task time to evidence in the record was harmless error.'" (quoting *Edwards v. Comm'r of Soc. Sec.*, No. 18-CV-862-FPG, 2020 WL 4784583, at *4 (W.D.N.Y. Aug. 18, 2020))); *Elder v. Comm'r of Soc. Sec.*, No. 18-CV-1196, 2019 WL 6320355, at *6 (W.D.N.Y. Nov. 26, 2019) ("At best . . . the ALJ's conclusion comes from whole cloth. At worst, the conclusion responds to the vocational expert's testimony that an off-task behavior restriction of six minutes per hour—that is, one more minute of off-task behavior per hour—would be work preclusive."). Thus, in this case, the distinction

between an hourly five minute bathroom break versus one of five to ten minutes was outcome determinative as to Plaintiff's disability status and warranted greater explanation.

Accordingly, remand of this matter is required. On remand, should the ALJ again assess a bathroom break limitation, he should identify evidence in the record supporting his conclusion in that respect.

**III. Plaintiff's Remaining Arguments**

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings,

and the Commissioner's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 24, 2026
Rochester, New York